# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 1:20-cv-21066-BLOOM/Louis

BACSON TOBACCO COMPANY, LTD. *et al.*,

   Plaintiffs,

v.

DIPLOMATIC INTERNATIONAL COMPANY, LTD, *et al.*,

   Defendants.

_____/

## TEMPORARY RESTRAINING ORDER

**THIS CAUSE** is before the Court upon Plaintiffs', Bacson Tobacco Company, Ltd. ("Bacson") and Miami Warehouse Logistics, Inc. ("MWL") (collectively, "Plaintiffs"), Supplemental and Revised Motion for Temporary Restraining Order and Preliminary Injunction and Supporting Memorandum of Law, ECF No. [16] ("Motion"). The Court has reviewed the Motion, the Declaration of Hoang Thanh Bac, ECF No. [16-2] ("Bac Declaration"), the Declaration of Alexis Roldos, ECF No. [16-10] ("Roldos Declaration"), the Supplemental Declaration of Alexis Roldos, ECF No. [16-18] ("Roldos Supplemental Declaration"), the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part.

### I.    BACKGROUND

On March 10, 2020, Plaintiffs filed the instant lawsuit against Defendants, Diplomatic International Company, Ltd. ("Diplomatic") and Heritage Tobacco, LLC ("Heritage") (collectively, "Defendants"). ECF No. [1]. The Complaint alleges causes of action for false designation of origin and federal unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et*

*seq.* (Count I); common law trademark infringement and unfair competition under Florida law (Count II); cancellation of U.S. trademark registration under 15 U.S.C. § 1119 (Counts III and IV); and tortious interference with business relations under Florida law (Count V).

The Motion represents that Bacson manufactures, distributes, markets, promotes, offers for sale and sells tobacco products, namely cigarettes, for the global market, including for transshipment and resale in other markets, including the United States, under the trademark SUNNY. *See* ECF No. [16] at 2. Bacson, a Vietnamese company, ECF No. [1] at ¶ 4, has owned the SUNNY brand since 1997 in Vietnam and has registered its rights, title, and interest to use the SUNNY trademark in Vietnam. ECF No. [16] at 2-3. Since 2015, Bacson has used the SUNNY trademark in United State commerce in association with tobacco products, and it has manufactured, marketed, promoted, distributed and sold cigarettes under the SUNNY trademark continuously and without interruption since that date. *See* Bac Declaration at ¶ 7. Bacson has shipped SUNNY products in boxes, crates, and packaging bearing the SUNNY trademark from Vietnam to the United States for distribution and sale to end-customers located in the Caribbean, particularly in Jamaica. *See id.* MWL has served as Bacson's distributor and licensee since 2019 and has been authorized to sell Bacson's products under the SUNNY brand to its customers in Jamaica since early 2015. *See* ECF No. [16] at 2-3.

Sometime in 2015, Diplomatic contacted Bacson to purchase SUNNY brand cigarettes for shipment through the United States. *Id.* at 4. Bacson, Diplomatic, and MWL then agreed to an arrangement under which Bacson's SUNNY branded cigarettes would be shipped through the United States destined for markets in the Caribbean. Once the shipment arrived in the United States from Bacson, Diplomatic would resell the products to MWL, who would then prepare the shipments for subsequent export and sale to its longstanding customer in Jamaica, Jadex

International ("Jadex"). *Id.*

In May 2019, MWL discovered that Diplomatic was selling Bacson's products directly into the Jamaican market rather than through MWL, who had built up that market. *Id.* at 4. Upon learning of this, Bacson ceased doing business with Diplomatic and began shipping directly to MWL, and Bacson appointed MWL as its sole authorized distributor and licensee of SUNNY branded cigarettes for resale to the Caribbean. *Id.* at 5.

The Motion maintains that on December 27, 2019, U.S. Customs and Border Protection ("CBP") detained two shipments of SUNNY branded cigarettes manufactured by Bacson and destined for sale to MWL. *Id.* at 5, 8. According to CBP, the shipment was detained because it contained "counterfeit" product.[1] *Id.* at 5. Upon investigation, Plaintiffs learned that Diplomatic had previously filed for and obtained a trademark registration for the SUNNY mark and had recorded the trademark registration with CBP.[2] *Id.* Specifically, the Motion represents that on September 10, 2015, without obtaining Bacson's permission, authorization, consent or knowledge, Diplomatic had claimed the SUNNY brand as its own and applied for the SUNNY trademark with the United States Patent and Trademark Office ("USPTO") for cigarettes and roll-you-own-tobacco in Class 34. *Id.* at 5-7.[3]

In support of its application for federal registration of the SUNNY mark, Diplomatic submitted an identical specimen of the Bacson SUNNY branded cigarettes and passed it off as its

---

[1] On February 21, 2020, CBP agreed to release the shipment to MWL's custody. *Id.* at 9.

[2] The USPTO issued U.S. Registration No. 5,092,485 in the Name of Diplomatic for the SUNNY mark for cigarettes and roll-your-own tobacco in Class 34. *Id.* at 7.

[3] The Bac Declaration states that Bacson has a pending trademark application with the USPTO for its SUNNY mark in Class 34 for cigarettes. *See* Bac Declaration at ¶ 8.

own. *Id.* at 6. Additionally, Diplomatic represented to the USPTO that its first use of the SUNNY mark was in August 13, 2015,[4] and stated that "no other persons, . . . have the right to use the mark in commerce, either in identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion, or mistake, or to deceive." *Id.* at 6.

According to Plaintiffs, Diplomatic's representations to USPTO were false and Diplomatic knew that it did not have priority use of the SUNNY mark because prior to submitting its application, Diplomatic "had engaged in at least three transactions where it purchased SUNNY branded cigarettes from Bacson Tobacco which it then sold to MWL, who then exported the product for sale to MWL's customer in Jamaica. In each of the three instances, Bacson Tobacco was the manufacturer and owner of the SUNNY branded cigarettes, Diplomatic International obtained the product from Bacson Tobacco, then Diplomatic International sold the product to MWL who then exported the product for ultimate sale to MWL's customer in Jamaica." *Id.* at 8 (internal citations omitted). The Motion adds that despite failing to secure Bacson's permission or authorization, Diplomatic continues to use the SUNNY trademark in connection with the distribution and sale of cigarettes both within Florida and in the Caribbean. *Id.*

According to the Roldos Declaration, on or about February 25, 2020, MWL learned from Jadex that a Diplomatic representative approached Jadex seeking to induce it to purchase SUNNY

---

[4] According to Plaintiffs, the date of August 13, 2015 corresponds to one of the transactions entered into between Diplomatic and Bacson. *See* ECF No. [16] at 7. Plaintiffs stress that in June 2015, Diplomatic had purchased SUNNY branded cigarettes from Bacson for shipment through the United States, and that a subsequent shipment of SUNNY branded cigarettes occurred in July 2015. *Id.* They also state that after these two shipments but before August 13, 2015, there was at least one additional shipment of SUNNY cigarettes that Bacson shipped through the United States. *See id.* at 8.

cigarettes directly from Diplomatic. *See* Roldos Declaration at ¶ 31. Diplomatic's representative allegedly explained to Jadex that Diplomatic planned to begin producing cigarettes in Miami under the SUNNY brand for direct sale to the Jamaican market. *See id.* at ¶ 32. Further, the Motion contends that Diplomatic is working with Heritage, who will manufacture the SUNNY branded cigarettes for Diplomatic, who will then export them and sell them directly to the Jamaican market. ECF No. [16] at 9. The Motion represents that upon information and belief, Heritage and Diplomatic still intend to produce cigarettes in Miami that bear the SUNNY brand for sale in the United States and Jamaica. *Id.* at 11. In fact, the Roldos Supplemental Declaration attests that Heritage "may have begun to manufacture and is attempting to export the product out of the United States." *See* ECF No. [16-18] at ¶ 4.[5]

According to Plaintiffs, Defendants' actions are a threat to Bacson's trademark rights in the SUNNY brand and are harmful to MWL's business operations, particularly its Jamaican market. ECF No. [16] at 10. Defendants further represent that Heritage is fully aware of Bacson's rights to the SUNNY mark and of MWL's longstanding customer relationships in Jamaica and its role as Bacson's exclusive authorized distributor of SUNNY branded cigarettes. *Id.* The Motion concludes that by using the allegedly counterfeit SUNNY mark in the United States and by producing cigarettes bearing the SUNNY mark, Defendants are causing irreparable harm to Bacson's SUNNY mark and to Plaintiffs' reputation and goodwill in the SUNNY mark. *See id.* at 10-11. They, therefore, seek a temporary restraining order and a preliminary injunction against Defendants from manufacturing, exporting, and selling SUNNY branded cigarettes bearing

---

[5] Plaintiffs' counsel states in the Motion that she was contacted by Heritage's counsel on March 12, 2020 and was told that another company under common ownership may be the manufacturing party instead of Heritage, but no evidence was provided, and the actual manufacturing is to take place at the same premises operated by Heritage. *See* ECF No. [[16] at 19 n.4.

Bacson's SUNNY mark. *Id.* at 1, 12.

## II. DISCUSSION

The Eleventh Circuit has explained that the four factors to be considered in determining whether to grant a temporary restraining order or a preliminary injunction are the same. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005). Namely, a movant must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Id.* at 1225-26 (citing *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)). "The primary difference between the entry of a temporary restraining order and a preliminary injunction is that a temporary restraining order may be entered before the defendant has an adequate opportunity to respond, even if notice has been provided." *Textron Fin. Corp. v. Unique Marine, Inc.*, No. 08-10082-CIV, 2008 WL 4716965, at *5 (S.D. Fla. Oct. 22, 2008). Further, a temporary restraining order may be granted without notice to the adverse party only if: (1) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and (2) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required. *See* Fed. R. Civ. P. 65(b)(1).

Here, Plaintiffs have demonstrated that they are substantially likely to succeed on the merits, that they will suffer immediate and irreparable harm due to Defendants' alleged actions if injunctive relief is not entered,[6] that the threatened harm to Plaintiffs outweighs the harm to

---

[6] "'[G]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion.' '[T]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim

Defendants if injunctive relief is granted, and that injunctive relief will not harm the public interest. Further, in accordance with Rule 65(b)(1), Plaintiffs' counsel has certified why notice to Diplomatic should not be required before a temporary restraining order is issued. Specifically, Plaintiffs "are deeply concerned that the unlawful product being manufactured could be contaminated and increase the risk to the consumer." *See* ECF No. [16] at 19. *See id.* at 10-11 (stating that the "risk of irreparable harm is rendered even more severe due to the fact that the product involved is tobacco/cigarettes and so any unauthorized manufacture of such product increases the risk to consumers").

Plaintiffs' counsel represents, moreover, that while Heritage was formally served on March 11, 2020, Plaintiffs provided a copy of the Complaint and the Corrected Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. [8], to Diplomatic's counsel by email on March 11, 2020. Plaintiffs attempted hand delivery of same via process server on March 12, 2020, which counsel refused to accept. ECF No. [16] at 18-19. The Motion notes that Plaintiffs are also transmitting an additional copy of the above materials to Diplomatic in Hong Kong via international Federal Express. *See id.* at 19. *See also* Fed. R. Civ. P. 65 advisory committee's note to 1966 amendment ("[T]emporary restraining orders have been issued without any notice when it was feasible for some fair, although informal, notice to be given. . . . informal notice, which may

---

to control the nature and quality of the defendants' goods. Even if the infringer's products are of high quality, the plaintiff can properly insist that its reputation should not be imperiled by the acts of another.' A plaintiff need not show that the infringer acted in such a way as to damage the reputation of the plaintiff. It is the loss of control of one's reputation by the adoption of a confusingly similar mark that supplies the substantial threat of irreparable harm." *Ferrelgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190-91 (11th Cir. 2005) (internal citations omitted); *see also Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) ("It is generally recognized in trademark infringement cases that (1) there is no adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm.") (citation omitted).

be communicated to the attorney rather than the adverse party, is to be preferred to no notice at all."). The Court, therefore, finds that the entry of a temporary restraining order against both Defendants is warranted at this time.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion, **ECF No. [16]**, is **GRANTED IN PART** as to Plaintiffs' request for a temporary restraining order but **DENIED IN PART** as premature as to the request for a preliminary injunction at this time.

2. Defendants and their agents, representatives, servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint venturers, parents, subsidiaries, related corporations, and others in privity and acting in concert with them are enjoined from:

    a. Using the SUNNY mark and any other mark containing or consisting, in whole or in part, of the name "SUNNY," and any other mark confusingly similar to or colorable imitation of the SUNNY mark, including, in the advertising, distribution, offering for sale, and/or sale of products or services that may reasonably be encompassed by the SUNNY mark or which may constitute a natural zone of expansion for Plaintiffs;

    b. Using any service mark, trademark, trade name, trade dress, word, domain name, number, abbreviation, design, color, arrangement, collocation, or any combination thereof, which would imitate, resemble, or suggest the SUNNY mark;

    c. Manufacturing and/or selling tobacco products or tobacco-related products

under the SUNNY mark;

    d. Otherwise infringing the SUNNY mark;

    e. Otherwise unfairly competing with Plaintiffs or otherwise injuring their business reputation or goodwill in any manner;

    f. Using or registering any domain name which is confusingly similar to the SUNNY mark in advertising, distribution, offering for sale, and/or sale of a domain name registration, or any other goods or services that may reasonably be encompassed by the SUNNY mark, or which may constitute a natural zone of expansion for Plaintiff;

    g. Falsely claiming any affiliation with Bacson Tobacco Company, Ltd.

3. This Order shall be binding upon the parties to this action and all other persons or entities who receive actual notice of this Order by personal service or otherwise.

4. As a condition of the effectiveness of the restraining aspects of this Order, Plaintiffs shall post a bond in a form satisfactory to the Clerk in the amount of **$10,000.00**, securing Defendants against their costs and damages if it is found that they were wrongfully restrained. **Said security is to be filed prior to 4:30 P.M. on Monday, March 23, 2020.**

5. This Temporary Restraining Order is entered this **18th day of March, 2020,** and shall remain in full force and effect until **Wednesday, April 1, 2020**, unless extended for good cause shown upon motion duly filed and served on all parties.

6. Plaintiffs are directed to immediately serve the Defendants, or their resident agent, or their counsel, with the summons, the Complaint, the moving papers, and a copy of this Order.

7. A hearing on Plaintiffs' Motion for Preliminary Injunction, **ECF No. [16]**, is set for **Wednesday, April 1, 2020 at 10:00 a.m.** The hearing shall take place at Wilkie D. Ferguson, Jr. United States Courthouse, 400 North Miami Avenue, Miami, FL 33128, Chambers 10-2 before Judge Beth Bloom.

8. Any response or opposition to Plaintiffs' Motion for Preliminary Injunction, **ECF No. [16]**, must be filed and served on Plaintiffs' counsel by **Monday, March 30, 2020**. Defendants are on notice that the failure to appear at the hearing may result in the imposition of a preliminary injunction against them. *See* Fed. R. Civ. P. 65.

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 18, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record